UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.T. TAYLOR,                                    Case No. 23-11883
                          Plaintiff,
v.                                              Judith E. Levy
                                                United States District Judge
CHAD SMITH,
                          Defendant.            Curtis Ivy, Jr.
_____/                 United States Magistrate Judge

## ORDER GRANTING IN PART MOTION TO COMPEL (ECF No. 18)

Plaintiff is suing Detroit Police Officer Chad Smith for fabrication of evidence and malicious prosecution in connection with his arrest, charges, and imprisonment for gun-related offenses. To state it briefly, Defendant arrested Plaintiff after allegedly seeing him drop a gun as he fled the scene. Plaintiff was sentenced to a term of imprisonment for that incident. Then, new evidence called Plaintiff's guilt into question, so the case was remanded for a new trial. Charges were dismissed before the new trial commenced. He sues Defendant seeking damages for the loss of educational opportunity, vocational opportunity, recreational activities, and personal fulfillment. (ECF No. 1).

Defendant moved to compel discovery responses from Plaintiff. (ECF No. 18, 33). He seeks downloads of Plaintiff's social media accounts, authorizations for and production of his tax records and employment records, and a response to Interrogatory No. 12. The motion was referred to the undersigned. (ECF No. 21).

"Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26.  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  S*uperior Prod. P'ship v. Gordon Auto Body Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  Fed. R. Civ. P. 37.

A.     Social Media Accounts

Defendant asked Plaintiff to produce a copy of "all social media accounts" he owns and has access to, including the profile page, posts, connection information, activity log, and account access history.  (ECF No. 18-3, PageID.141).  Defendant insists that the social media accounts likely contain discoverable information demonstrating that there was probable cause for Plaintiff's arrest.  (ECF No. 18, PageID.73).  Plaintiff opposes the request.  He argues that the request for the contents of social media accounts beyond public

2

posts amounts to a fishing expedition and is inappropriate. (ECF No. 29, PageID.408-10).

Social media posts and messages or other communications are discoverable; they are neither privileged nor protected by the owner's privacy interests. *Adkisson v. Jacobs Eng'g Grp.*, 2020 WL 8254452, at *4 (E.D. Tenn. Dec. 10, 2020) (citation omitted). Still, only relevant and proportional discovery is allowed. The Federal Rules of Civil Procedure no longer require admissibility to be discoverable. Information is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Since evidence need not be admissible to be discoverable, "the scope of discovery under Fed. R. Civ. P. 26 is broader than that under the Federal Rules of Evidence." *Sanford v. Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019). Still, parties are not allowed unfettered access to the opposing party's communications hoping to find relevant information.

To support the request, Defendant tells a version of a story about Plaintiff's communications from prison that he says show the relevance of social media accounts. To the Court, Defendant's story overinflates the connection between those communications and Plaintiff's social media accounts.

Defendant relies on calls and emails Plaintiff made to friends or family while he was incarcerated, and his deposition testimony to show relevance for the

accounts.  The calls, emails, and testimony discuss only a Facebook account;
Plaintiff testified that he may have created an Instagram account, but he could not
recall doing so or using the account if he did.  (ECF No. 30-1, PageID.471).  So the
focus here is the Facebook account.

Plaintiff discussed his Facebook account a few times.  One time, he asked
his girlfriend to find his Facebook password to access his account.  He wanted to
have "G Man do something for" him.  (ECF No. 18-24, PageID.201).  "G Man" is
Plaintiff's brother.  (ECF No. 18, PageID.71).  Plaintiff did not say on this call
what he wanted his brother to do for him.  During his deposition, he could not
recall why he wanted to get in touch with his brother, he said probably to "get in
touch with some females."  (ECF No. 30-1, PageID.466).  Defendant provided no
further information about Plaintiff's brother and what relevance his brother has to
this litigation.

During another telephone call with his girlfriend, Plaintiff again asked about
his password, this time for a different reason.  He told his girlfriend that someone
messaged his mother, so he was "trying to see something."  (ECF No. 18-26,
PageID.205).  This person's profile had no information on it.  The message said
that they were a friend of Plaintiff's and trying to connect with him.  Plaintiff said
he did not bring his friends around his mother, so no one would know his mother.

(*Id.*).  There is no more information about this unidentified person and how he or she is relevant to the litigation.

The final set of facts Defendant uses to connect Plaintiff's social media with this case are Plaintiff's discussions about "Efa Billy."  He spoke of wanting a friend to talk to Efa Billy and tell him to "stop playin around."  (ECF No. 18-27, PageID.207).  He said Efa should be on his Facebook page.  He did not say he wanted to speak to Efa through Facebook, he did not ask this friend to find his Facebook password.  In an email from prison, Plaintiff said that Efa owns the car that was at the scene of the arrest and that Efa is the person who dropped the gun, not Plaintiff.  (ECF No. 18-21, PageID.195).  This conflicts with Plaintiff's response to a request for admission where he denied knowing the owner of the car. (ECF No. 18-19, PageID.191).

Plaintiff emailed his girlfriend from prison during August 2018 asking her to get his Facebook password.  He believed his way out of prison was through something in the account.  (ECF No. 30-1, PageID.468).  He testified that he was "[p]robably [] trying to search and get my way out."  (*Id.* at PageID.469).  He said he was "trying to find some people."  (*Id.*).

Defendant contends that, in view of the facts above, Plaintiff prison phone calls and messages show that the persons he wanted to contact via Facebook "are inextricably related to the underlying incident."  (ECF No. 18, PageID.72).  But the

only person Plaintiff discussed relevant to the litigation is Efa Billy.  There is no connection between this case and Plaintiff's brother or the stranger who contacted his mother.

There is a connection, however, between Efa Billy and this lawsuit.  And Plaintiff talked about suing Facebook to get in touch with Efa, though whether he wanted to contact Efa himself or have someone else do so is unclear.  Thus, social media posts about Efa Billy and private communications with or about Efa Billy are relevant.

In his argument against producing social media downloads, Plaintiff cites *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387 (E.D. Mich. 2012).  Like Defendant here, in *Tompkins*, the defendant wanted records from the plaintiff's Facebook account, including information not available for viewing by the public. While the court recognized that private social media posts are not privileged or protected by privacy concerns, the court precluded the discovery because the defendant failed to establish that the social media posts would lead to the discovery of admissible evidence.  *Id.* at 388.  *Tompkins* is not as helpful to Plaintiff as he would like.  For one thing, that case relied on an outdated standard of relevance— leading to the discovery of admissible evidence.  For another, important to that holding was the lack of information about what the private posts or

6

communications would contain.  *Id.*  Defendant here showed the relevance of a

subset of information—content related to Efa Billy.

The motion to compel social media information is **GRANTED IN PART**.

Defendant has established relevance to a narrow subset of social media content:

posts or communications with or about Efa Billy from the date of Plaintiff's arrest

through the end of his imprisonment.[1]  The discovery is limited to Plaintiff's

Facebook account.  His recorded conversations and messages reference Facebook,

no other account.  And Plaintiff admitted using Facebook but could not recall using

Instagram or whether he ever created an Instagram account.  (ECF No. 30-1,

PageID.471).  Defendant is not entitled to the contact list or the access history and

the like from the Facebook account.  Only posts and communications with or about

Efa Billy.

B.     Tax and Employment Records

Plaintiff seeks damages for mental and emotional harm and for lost

educational and vocational opportunity, but not for lost wages.  Thus, his income is

not a central issue here.  Even so, Defendant requested authorizations for the

release of employment records for the 15 years before incarceration and the time

since Plaintiff's release (ECF No. 18-3, PageID.140), and for tax returns for the

---

[1] This time frame appears to fit Defendant's need for evidence about "what information
Plaintiff knew *before* he was imprisoned."  (ECF No. 30-1, PageID.459).

five years before incarceration and five years since release (*id.* at PageID.139).

Plaintiff gave authorization for the release of employment records but objected to

the subpoenas sent to his employers for the records.  (ECF No. 18, PageID.69).

Defendant argues that Plaintiff's employment records are relevant to show

his emotional state before his arrest, such as performance reviews or write-ups.

(*Id.* at PageID.77, 89).  Defendant says that tax returns will show whether Plaintiff

decided to remain employed or terminate his employment.  (*Id.* at PageID.78).

Defendant contends that the tax records will give a "holistic view of [Plaintiff's]

lifestyle, including why he changes jobs every 8 months on average."  (*Id.* at

PageID.79-80).  The tax returns will also show whether Plaintiff disclosed all of

his employment by cross-referencing employment records with tax records.  (*Id.* at

PageID.80).  In reply, Defendant maintains that tax returns will identify non-

employment income sources, which goes to whether Plaintiff's lifestyle changed

because of his imprisonment.  (ECF No. 30, PageID.461).

Plaintiff objects to producing these records.  He argues that since his income

is not at issue, his tax returns are irrelevant.  (ECF No. 29, PageID.411).  As for

employment records, Plaintiff asserts that the information Defendant seeks about

emotional state is available elsewhere—Plaintiff's deposition testimony and

Plaintiff's psychiatric and psychological treatment records.  Plaintiff appears to

suggest that the most concerning part of this discovery request, however, is that

8

Defendant seeks employment records from 15 years prior to imprisonment and the time since release—a 20-year timeframe.  Plaintiff says this timeframe is overbroad and unreasonable.  (*Id.* at PageID.412).

The motion to compel employment records is **GRANTED IN PART**. Defendant is entitled to discovery to defend against the assertion that Plaintiff's arrest and imprisonment caused a lifestyle change.  He says he lost educational and vocational opportunities and suffered emotional harm.  Employment records will allow Defendant to trace Plaintiff's employment history—the kinds of jobs he held, how much he was paid, perhaps why he left or was fired, if he was.  If Plaintiff had emotional behavioral problems at work, that likely would have been documented in his personnel file, too.  All this is relevant to damages.  It does not matter that Plaintiff testified about his employment history; Defendant may probe the veracity of those assertions with the records themselves.  But nearly 20 years' worth of employment records is overbroad and unproportional.  The request is narrowed to employment records in the five years before incarceration and any employment records following Plaintiff's release from prison.  This timeframe should be sufficient to give Defendant a picture of Plaintiff's employment and work behavior before imprisonment and whether and how employment and behavior changed after.

The motion is **GRANTED** as to tax returns.  The Court disagrees with much of Defendant's justification for seeking tax returns.  Tax records will not give a "holistic view" of Plaintiff's lifestyle.  But tax returns would show any non-employment income sources—this justifies production of tax records.  If Plaintiff was earning income from a source that would not be disclosed in employment records, that information is relevant to Plaintiff's claimed lost vocational opportunities.  For instance, perhaps he was not maintaining employment because he was earning more from an outside source.  That would be relevant to Defendant's defense.

Production of these documents must be completed **within 21 days** of this Order.

C.    Interrogatory No. 12 and Costs and Fees

On July 12, 2024, Defendant served Interrogatory No. 12.  He asked Plaintiff which crimes serve as the basis for his malicious prosecution claims. (ECF No. 18-11, PageID.163).  Plaintiff did not respond to the request despite Defendant's attempt to follow-up.  (ECF No. 18, PageID.80).  In his November 26, 2024, response brief, Plaintiff said he would respond to the interrogatory within 10 days.  (ECF No. 29, PageID.412).

Though Defendant acknowledges receipt of the discovery response, he asks for an award of attorney fees for having to bring the motion to compel the

response.  (ECF No. 30, PageID.461-62).  This is aside from the request for fees and costs in bringing the entire motion to compel.  (*See* ECF No. 18, PageID.81).

The Court will **GRANT IN PART** Defendant's request for attorney fees.

Federal Rule of Civil Procedure 37(a)(5)(A) requires the Court to award, after giving an opportunity to be heard, payment of reasonable expenses incurred in bringing the motion if the requested discovery is provided after the motion was filed.  Rule 37(a)(5)(C) allows—but does not require—apportionment of reasonable expenses if the motion to compel is granted in part, after an opportunity to be heard.

Since the motion as a whole is granted in part, and Plaintiff belatedly answered the interrogatory, the Court will apportion reasonable expenses.  The Court finds that a total award of 1/3 of Defendant's costs and fees incurred in drafting and filing the motion to compel is an appropriate award.  This will compensate Defendant for bringing the partly successful arguments for social media and employment records.  It will also compensate for having to bring the motion to compel a response to Interrogatory 12.  Only 1/3 of the expenses is awarded because many of Defendant's discovery requests (except Interrogatory No. 12) were unreasonably overbroad, such as the request for all content in all social media accounts and 20 years' worth of employment records.

The parties must confer on costs and fees within 14 days of this Order.  If no agreement is reached, Defendant must file a bill of costs with supporting argument. Plaintiff must respond to the argument within 14 days of service.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.


Date: February 3, 2025                          s/Curtis Ivy, Jr.
                                                Curtis Ivy, Jr.
                                                United States Magistrate Judge

12