**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

J.T. Taylor,

Plaintiff,

v.

Chad Smith,

Defendant.

Case No. 23-cv-11883

Judith E. Levy
United States District Judge

Mag. Judge Curtis Ivy, Jr.

________________________________/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS [79] AND ADOPTING REPORT AND RECOMMENDATION [76] TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [62]**

In 2017, Defendant Chad Smith (a police officer and member of the Detroit Police Department's Fugitive Recovery Team) arrested Plaintiff J.T. Taylor for illegally possessing a firearm. Plaintiff was tried before a state-court judge and found guilty, but the same judge later granted him a new trial because his counsel failed to introduce certain evidence in his defense. The charges against Plaintiff were ultimately dismissed without prejudice.

Following the dismissal of the criminal charges, Plaintiff sued Defendant in this Court under 42 U.S.C. § 1983. (*See* ECF No. 1.) Plaintiff's complaint alleges that Defendant fabricated the evidence that he possessed a firearm and caused him to be maliciously prosecuted based upon that fabricated evidence. (*See id.* at PageID.8–10.)

Defendant filed a motion for summary judgment under Federal Rule of Civil Procedure 56. (ECF No. 62.) The motion is fully briefed. (*See* ECF Nos. 69, 73.) The case was referred to Magistrate Judge Curtis Ivy, Jr. for all pre-trial proceedings. (*See* ECF No. 63.) On September 15, 2025, Judge Ivy issued a Report and Recommendation (R&R) recommending that the Court deny Defendant's request for summary judgment on Plaintiff's fabrication and malicious-prosecution claims but grant Defendant's motion with respect to testimonial immunity and certain categories of damages that Plaintiff seeks in his complaint. (ECF No. 76.) Judge Ivy explained that Plaintiff's fabrication and malicious-prosecution claims both turn on the same issue: "whether Defendant fabricated the arrest report" that led to Plaintiff's prosecution. (*Id.* at PageID.1514.) Judge Ivy concluded that genuine disputes of fact and

questions of witness credibility preclude entering summary judgment for Defendant with respect to those claims. (*See id.* at PageID.1523.)

Defendant timely filed three objections to the portions of the R&R that recommend denying Defendant's motion with respect to Plaintiff's fabrication-of-evidence and malicious-prosecution claims. (ECF No. 79.) Plaintiff filed a response to Defendant's objections. (ECF No. 80.) No party objected to Judge Ivy's recommendation that the Court grant Defendant summary judgment with respect to his testimonial immunity and Plaintiff's claims for certain types of damages.

For the reasons set forth below, Defendant's objections (ECF No. 79) are OVERRULED. The R&R (ECF No. 76) is ADOPTED and Defendant's motion for summary judgment (ECF No. 62) is GRANTED IN PART (as to testimonial immunity and certain damages) and DENIED IN PART (as to Defendant's potential liability for fabrication of evidence and malicious prosecution), as set forth more fully in the R&R.

## I. Background

The background set forth in the R&R (ECF No. 76, PageID.1505–1509) is fully adopted as though set forth in this Opinion and Order. The

following facts (most of which are covered in the R&R) appear to be most relevant to Defendant's fact-intensive objections.

This case arises from an encounter between Defendant and Plaintiff that occurred during the Detroit Police Department's investigation of a shooting that Plaintiff's girlfriend (Yvetta Gee) was suspected of having carried out. (ECF No. 76, PageID.1505.) On the evening of May 19, 2017, Defendant was surveilling a Toyota Camry that was believed to belong to Ms. Gee at the corner of Westphalia Street and Greiner Street in Detroit. (*Id.*) Although the parties' accounts of the incident differ, they agree that Plaintiff approached the Camry, removed items from the vehicle, and carried those items toward a Ford Fusion that was parked across the street. (*See id.* at PageID.1506–1508.)

Defendant says that he saw Plaintiff and another man arrive together in the Fusion. (*See id.* at PageID.1506.) Plaintiff exited through the driver's side door, walked to the Camry, and removed what appeared to be items of clothing. (*Id.*) Plaintiff placed a load of items in the back seat of the Fusion and then returned to the Camry to grab additional items. (*Id.*) The other man stood outside the Fusion and waited while Plaintiff was removing items from the Camry. (*Id.*)

Plaintiff, in contrast, says that he walked to the Camry from his uncle's house to retrieve items belonging to him, including a bandage and medicine. (*Id.* at PageID.1507.) He claims that he needed these items because he had injured his hand a few days before. (*Id.*) Plaintiff says that, after he retrieved the items, he approached the man standing outside the Fusion and asked if he could temporarily rest his belongings on the trunk of the car while he wrapped his hand. (*Id.*) He claims that he did not know the other man. (*Id.* at PageID.1508.)[1]

The parties agree that Defendant approached the Fusion and made his presence known, at which point Plaintiff and the other man both fled. (*See id.* at PageID.1506, PageID.1508.) The other man escaped, but Plaintiff was apprehended by other officers and placed under arrest. (*See id.* at PageID.1507.) Defendant wrote in Plaintiff's arrest report that, while running away, Plaintiff "dropp[ed] the items in his hand along with

[1] Defendant suggests that several aspects of Plaintiff's story cannot be credited in light of the available evidence. (*See* ECF No. 62, PageID.799–802; ECF No. 79, PageID.1543.) Defendant cites testimony provided by Yannie Jones, who was Wilson's girlfriend at the time of this incident. (*See* ECF No. 79, PageID.1543.) Jones testified that Wilson and Plaintiff were friends and that Wilson was driving her car (a Ford Fusion) that day. (*See id.*) Defendant also challenges Plaintiff's claim to have spent only five to eight minutes walking from his uncle's house given that it was located 1.2 miles from where the Camry was parked. (*See id.* at PageID.1538.)

a[] hand gun (Alkar .32 semi auto #38093 with 9 live rounds).” (ECF No. 62-4, PageID.829.) Plaintiff denied possessing or dropping the firearm during his deposition in this case. (*See* ECF No. 69-5, PageID.1246.) Plaintiff alleges that Defendant fabricated the claim that he possessed a firearm to attempt to gain leverage that he could then use to persuade Plaintiff to cooperate in the investigation of Ms. Gee. (*See* ECF No. 1, PageID.3–4.) He testified during his deposition that, shortly after his arrest, “they” told him that they knew the gun was not his, but if Plaintiff did not tell them who the gun belonged to or where “the girl” was, the gun was “going to become” his. (ECF No. 69-5, PageID.1240.)

Another member of Detroit’s Fugitive Recovery team (Sergeant Kenneth Dale) was stationed nearby when Plaintiff fled from Defendant on foot. (*See* ECF No. 62-3, PageID.820–821.) Sergeant Dale later testified that Defendant told “us over the radio that there was a weapon recovered.” (*Id.* at PageID.821.) He did not himself see the weapon and was too far away to see whether anything fell from Plaintiff’s person as he fled from Defendant. (*See id.*)

On the day after Plaintiff’s arrest, Sergeant Dale went to Plaintiff’s family’s house and spoke with several of Plaintiff’s family members as

part of the ongoing investigation into Yvetta Gee's whereabouts. (*See* ECF No. 62-9 (audio file); ECF No. 62-10 (transcript of audio file).) Part of the conversation was secretly recorded by Plaintiff's brother. (*See* ECF No. 1, PageID.5.) During the recorded portion of the conversation, Sergeant Dale informed the family that Plaintiff "got himself in trouble" and "got arrested last night." (ECF No. 62-10, PageID.904.) He explained that Plaintiff was removing items from Ms. Gee's Camry and then took off running after being approached by police. (*Id.* at PageID.905.) He then described a conversation in which he told Plaintiff that they just wanted to know where Yvetta Gee was hiding but Plaintiff refused to cooperate. (*See id.* at PageID.905–906.) Sergeant Dale told Plaintiff's family about "the bigger issue," which was "[t]here was a gun found in the car that [Plaintiff] was driving." (*Id.* at PageID.906.)[2] He explained that he believed that "the investigator" on Plaintiff's gun case "can choose to not charge [Plaintiff] with that gun" because "it wasn't on his person." (*Id.*)

Plaintiff was ultimately charged in state court with possessing a firearm as a convicted felon. A bench trial was held before Judge Mark

[2] It remains unclear why Sergeant Dale stated that the gun was found "in the car," as there is no other evidence that this is where the firearm was found.

T. Slavens of Michigan's Third Judicial Circuit Court. (*See generally* ECF No. 62-12.) Defendant was the only witness who testified at the trial. Consistent with his arrest report, Defendant told Judge Slavens that he saw Plaintiff drop an item that turned out to be a firearm as Plaintiff fled from him on foot. (*Id.* at PageID.954–955.) Judge Slavens found this testimony credible and concluded that the evidence, taken as a whole, sufficed to establish beyond a reasonable doubt that Plaintiff possessed a firearm. (*Id.* at PageID.1012–1017.)

Following his conviction, Plaintiff moved for a new trial on grounds that he received ineffective assistance from the attorney who represented him at trial. (*See* ECF No. 1, PageID.5.) Plaintiff's motion explained that his trial counsel possessed but failed to introduce the audio file of the recorded conversation between Sergeant Dale and Plaintiff's family members. (*See id.*) During a hearing on this motion held in March 2020, Judge Slavens pushed the prosecution to explain Sergeant Dale's recorded statement that Plaintiff "didn't have a gun on him." (ECF No. 69-10, PageID.1349–1351.) He stated that he had a "very good suspicion" that Sergeant Dale got that information from Defendant. (*Id.* at PageID.1351; *see also id.* at PageID.1356.) He further stated that, as the

"fact finder in this case, . . . I can tell you absolutely that [hearing the audio file] would have changed the outcome of this proceeding . . . and I would have very strongly had reasonable doubt as to [Plaintiff's] guilt." (*Id.* at PageID.1356.) Judge Slavens granted Plaintiff a new trial on grounds that his trial counsel was ineffective in failing to introduce and use the Dale recording. (*See id.* at PageID.1355–1356.)

A second trial was never held. The charges against Plaintiff were dismissed without prejudice in February 2022. (*See* ECF No. 62-16 (order); *see also* ECF No. 69-12 (transcript of dismissal hearing).)

## II. Legal Standard

A party may object to a magistrate judge's report and recommendation, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are

improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation, *see Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

## III. Analysis

The R&R recommends that Defendant's motion for summary judgment be granted in part and denied in part. (ECF No. 76.) Defendant raises three objections to the R&R's recommendation that summary judgment be denied as to his potential liability for fabrication of evidence

and malicious prosecution. (ECF No. 79.) The Court overrules all three objections for the reasons stated below.

### A. Objection No. 1: Potential Grounds to Disregard Plaintiff's Version of the Events Under *Scott v. Harris*

Defendant's first objection (which includes several sub-objections) argues generally that the R&R misapplies *Scott v. Harris*, 550 U.S. 372 (2007) in declining to disregard Plaintiff's deposition testimony that he did not possess or drop a gun.[3]

[3] The heading for Defendant's first objection states that the R&R erred in "evaluating each piece of Plaintiff's testimony as a separate factual issue, rather than considering his testimony as a whole." (ECF No. 79, PageID.1536.) The heading for sub-objection 1.A argues that the R&R "erred by finding that Plaintiff's demonstrably false testimony on material facts could create genuine issues for trial." (*Id.* at PageID.1538.) Defendant then addresses specific factual issues in sub-sub-objections 1.A.1, 1.A.2, and 1.A.3, arguing that the R&R erred "by sua sponte manufacturing a factual dispute regarding Plaintiff's arrival at the scene despite objective evidence that blatantly contradicts his testimony" (*id.* at PageID.1538–1541); "by requiring Defendant to 'fully connect' Plaintiff to Emmanuel Wilson and the Ford Fusion," which Defendant characterizes as "a standard that exceeds what summary judgment demands and ignores the reasonable inferences the record now compels" (*id.* at PageID.1541–1545); and "by finding that Plaintiff's contradictory and shifting testimony about post-arrest statements creates a genuine issue of material fact regarding Defendant's motive to fabricate evidence" (*id.* at PageID.1545–1547). Defendant then argues in sub-objection 1.B that the R&R erred "by failing to evaluate Plaintiff's testimony as a whole and apply *Scott v. Harris* to determine whether it is too incredible to create a genuine issue of material fact." (*Id.* at PageID.1548–1550.) Because these separate sections all ultimately involve Judge Ivy's application of *Scott*, the Court will address them jointly.

*Scott* holds that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380. The plaintiff in *Scott* filed a § 1983 suit against a police officer who allegedly used excessive force to stop the plaintiff's car during a high-speed pursuit. *See id.* at 374–75. The Supreme Court reversed lower court decisions that would have denied the police officer's motion for summary judgment. *See id.* at 376. It explained that, although a court must generally "adopt[] . . . the plaintiff's version of the facts" when a defendant moves for summary judgment in a § 1983 case, there was no basis to adopt that plaintiff's version because "a videotape capturing the events in question quite clearly contradicts the version of the story told by [the plaintiff] and adopted by the Court of Appeals." *Id.* at 378. It concluded that, "with regard to the factual issue [of] whether [the plaintiff] was driving in such fashion as to endanger human life," the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380. In short, a court could not credit the plaintiff's story that he was a "cautious and controlled driver" when

"what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id.*

In this case, Judge Ivy concluded that, under *Scott*, a jury would not be required to find "that Plaintiff was the person who possessed the gun and that Plaintiff dropped the gun as he ran over the grass" even if it rejected other aspects of Plaintiff's account—for instance, whether "Plaintiff was friends with the man who fled the scene with him and [whether] Plaintiff knew whose gun was found at the scene." (ECF No. 76, PageID.1518.) Judge Ivy reasoned that a "jury could find that Plaintiff lied about how he got to the scene, [and find] that Plaintiff drove the Ford Fusion, but still find that Plaintiff did not drop anything." (*Id.* at PageID.1516.)

Defendant objects to these aspects of Judge Ivy's analysis, arguing that *Scott* requires the Court to disregard Plaintiff's testimony in its entirety. (*See* ECF No. 79, PageID.1536–1550.) Defendant appears to admit that there is nothing inherently unbelievable about Plaintiff's testimony regarding the specific factual issues of whether he possessed and dropped the gun that was later found next to the Ford Fusion. (*See*

*id.* at PageID.1548–1549.) Defendant, rather, points to what are arguably unbelievable aspects of Plaintiff's account of the evening of May 19, 2017—e.g., "where he was, how he got there, who he was with, why he was there, and what was said afterward." (*Id.* at PageID.1549; *see also id.* at PageID.1548.) He contends that Plaintiff's claim that he did not possess or drop a gun "cannot be credited by a reasonable jury in light of his pervasive dishonesty regarding every other material circumstance." (*Id.* at PageID.1548.) Defendant argues that "[w]hen a plaintiff fabricates or misrepresents nearly every verifiable fact about an incident, *Scott* compels the conclusion that his testimony cannot create a genuine issue of material fact on the sole remaining disputed fact." (*Id.* at PageID.1548–1549; *see also id.* at PageID.1549 (arguing that no reasonable jury could credit Plaintiff's "denial of gun possession" when his testimony was "demonstrably false on nearly every material point").) He further asserts that *Scott* "requires courts to evaluate whether a plaintiff's testimony, *taken as a whole*, is 'too incredible to be accepted by reasonable minds.'" (*Id.* at PageID.1548 (quoting *Scott*, 550 U.S. at 380).)

The Court disagrees with Defendant (and agrees with Judge Ivy) regarding what *Scott* requires here. *Scott* does not support disregarding

a plaintiff's testimony about a key issue of fact simply because a reasonable jury could find *other* aspects of his story unbelievable. The Supreme Court's analysis in *Scott* concerned a single issue of fact—"whether respondent was driving in such fashion as to endanger human life." 550 U.S. at 380. The decision nowhere suggests that a court may disregard a non-moving party's testimony in its entirety based on evidence that undermines some (but not all) of that testimony.

In sum, Defendant's first objection (including all sub-objections) is overruled because Judge Ivy concluded correctly that *Scott v. Harris* does not require the Court to disregard Plaintiff's testimony in its entirety.

### B. Objection No. 2: Negative Inference Drawn from the Absence of Certain Evidence

In his second objection, Defendant argues that Judge Ivy erred in concluding that Defendant "did not fully connect Efa/Emmanuel Wilson as the man with Plaintiff at the Ford Fusion." (ECF No. 79, PageID.1550.) Defendant maintains that the R&R "effectively penalizes Defendant for failing to produce testimony from a witness who has been in contempt of court for many months despite diligent efforts from the defense to obtain such testimony through unresolved motions." (*Id.*)

The Court overrules this objection for the same reason that it overruled Defendant's first objection. As Judge Ivy explained in the R&R, it is irrelevant at this stage whether Defendant can "fully connect" Emmanuel Wilson to the Ford Fusion, because even if Defendant could make such a connection, that would not resolve the core dispute over whether Plaintiff possessed and dropped a firearm. (*See* ECF No. 76, PageID.1518 (explaining that a jury could find that Plaintiff did not possess or drop the gun even if it found that "Plaintiff was friends with the man who fled the scene with him"); *see also id.* at PageID.1516 (explaining that a jury "could find that Plaintiff lied about how he got to the scene, [and find] that Plaintiff drove the Ford Fusion, but still find that Plaintiff did not drop anything").)

Defendant's second objection is thus overruled.

### C. Objection No. 3: Facts that Potentially Establish Joint Constructive Possession of the Firearm

In his third objection, Defendant argues that Judge Ivy erred in denying his motion for summary judgment because, in Defendant's view, the "undisputed" and "indisputable" facts "support an inference of joint constructive possession" of the firearm by both Plaintiff and the other man at the scene. (ECF No. 79, PageID.1552–1553.) Defendant argues

that the "inference of joint constructive possession" supports a finding of "probable cause to arrest Plaintiff" and, thus, entitles Defendant to summary judgment regardless of any genuine dispute of fact regarding whether Plaintiff actually possessed or dropped the firearm. (*See id.*)

The R&R rejected Defendant's joint-constructive-possession theory because "Defendant failed to persuade [Judge Ivy] that probable cause existed based on the location of the gun and Plaintiff's flight path." (ECF No. 76, PageID.1525.) The Court finds no error in Judge Ivy's conclusion that the circumstances here are materially distinct from those involved in the two constructive-possession cases on which Defendant relied in his summary judgment briefing. (*See id.* at PageID.1524–1527 (discussing *United States v. Schreane*, 331 F.3d 548 (6th Cir. 2003) and *Brandon v. Burt*, No. 17-cv-149, 2018 WL 671392 (W.D. Mich. Jan. 17, 2018)).)

Defendant's third objection cites an additional case that was not presented in his summary judgment briefing: *United States v. Hall*, 20 F.4th 1085 (6th Cir. 2022). (*See* ECF No. 79, PageID.1553.) Defendant cites *Hall* to support his claim that Plaintiff and the other man may be found to have constructively possessed the firearm jointly because the "indisputable facts" purportedly establish that they "were there together

for a common purpose" that was "related to the [previous] violent shooting." (*Id.* (citing *Hall*, 20 F.4th at 1107).) This argument was not squarely presented previously, although Defendant did raise the possibility of joint constructive possession in his reply brief in support of his motion for summary judgment. (*See* ECF No. 73, PageID.1414.) *Hall* does not control here, in any event. The firearm in that case was found in the defendant's own vehicle after he sold cocaine and heroin to a confidential informant. *See Hall*, 20 F.4th at 1092–93. The firearm was recovered from a central console that also contained a large amount of cocaine and heroin. *Id.* at 1093. After being convicted by a jury, the defendant in *Hall* argued on appeal that the government failed to establish that he possessed the firearm because it was recovered from a "non-readily accessible console of [a] vehicle occupied by two individuals." *Id.* at 1107. The Sixth Circuit disagreed, explaining that there was sufficient evidence that the defendant "jointly and constructively" possessed both the drugs and firearm. *See id.* at 1106–07. *Hall* did not mention (much less rely on) evidence that the defendant shared a "common purpose" with the other individual in the vehicle.

But even if evidence of a "common purpose" were relevant here, Defendant has not established that Plaintiff and the other man were, in fact, pursuing any "common purpose." Defendant suggests that there is no dispute that the other man at the scene was Emmanuel Wilson and that Plaintiff and Wilson "were there for a purpose relating to the [prior] violent shooting." (ECF No. 79, PageID.1553.) But there is, in fact, a dispute as to the identity of the other man (*see* ECF No. 76, PageID.1516–1518),[4] and, more importantly, Defendant has not pointed to any evidence that shows that Plaintiff and the other man were both "there for a purpose relating to the violent shooting." Defendant cites the testimony by Wilson's former girlfriend (Yannie Jones) (*see* ECF No. 79, PageID.1553) but, as part of this testimony, Ms. Jones stated only that Wilson and Plaintiff were friends and that Wilson told her about Plaintiff's connection to the shooting in which Yvetta Gee was suspected.

---

[4] Plaintiff's claim not to know the other man strains credulity in light of testimony provided by Emmanuel Wilson's former girlfriend (Yannie Jones) that she owned the Ford Fusion, that Wilson was using the Fusion on the date of the incident, and that Wilson led her to understand that he was friends with Plaintiff. (*See* ECF No. 79-2, PageID.1558–1569.) Ms. Jones was deposed after the dispositive-motion deadline following what Defendant describes as "evasion of service." (ECF No. 79, PageID.1544.) Her statements were therefore not presented to or considered by Judge Ivy in preparing the R&R.

(*See* ECF No. 79-2, PageID.1567–1568.) Indeed, it remains unclear (and subject to dispute) why Plaintiff himself visited the car that Defendant was monitoring on the evening of May 19, 2017.

Ultimately, the Court would overrule Defendant's third objection even if there were sufficient evidence to establish that he jointly and constructively possessed the firearm. Plaintiff's fabrication-of-evidence and malicious-prosecution claims are both based on Defendant's report (and consistent statements thereafter) that he saw Plaintiff drop an object that turned out to be a firearm while fleeing the scene. (*See* ECF No. 62-4, PageID.829 (arrest report); ECF No. 62-11, PageID.920 (preliminary-hearing testimony); ECF No. 62-12, PageID.954–955 (trial testimony).) For purposes of the fabrication-of-evidence claim, the hypothetical existence of probable cause to arrest Plaintiff based on his flight path has no bearing on whether Defendant "knowingly fabricated" evidence that he saw an object fall from Plaintiff's waist area. *See Price v. Montgomery Cnty.*, 72 F.4th 711, 723 (6th Cir. 2023) (setting out elements of a fabrication claim). Similarly, the hypothetical existence of probable cause to arrest Plaintiff does not entitle Defendant to summary judgment on Plaintiff's malicious-prosecution claim, as that claim is also

based on Defendant's allegedly fabricated report that he saw Plaintiff drop an item as he was fleeing. *See Clark v. Abdallah*, 131 F.4th 432, 453 (6th Cir. 2025) (observing that "[p]robable cause, of course, is not supported by fabricated evidence" and thus affirming the district court's denial of summary judgment on a malicious-prosecution claim due to a dispute of fact regarding the "crucial question" of whether a purported eyewitness's testimony was fabricated).

In sum, Defendant's third objection is overruled. Judge Ivy did not err in analyzing the cases Defendant cited to support his constructive-possession argument and, regardless, any hypothetical basis to arrest Plaintiff based on joint constructive possession of a firearm would not entitle Defendant to summary judgment on Plaintiff's fabrication and malicious-prosecution claims.

**D. Unobjected to Portions of the R&R**

No party objects to the R&R's conclusions that Defendant is entitled to absolute testimonial immunity. (*See* ECF No. 76, PageID.1511–1512.) In addition, no party objects to the R&R's conclusion that Plaintiff is not entitled to (i) any damages that may be awardable on the state-law claim that Plaintiff agreed to dismiss and (ii) any damages sought by paragraph

37(f) of Plaintiff's complaint. (*See id.* at PageID.1528–1529.) The Court carefully reviewed and agrees with the R&R's conclusions in these respects regarding testimonial immunity and the unavailability of certain damages. The Court thus adopts these portions of the R&R.

## IV. Conclusion

For the reasons set forth above, Defendant's objections (ECF No. 79) are OVERRULED. Judge Ivy's R&R (ECF No. 76) is ADOPTED and Defendant's motion for summary judgment (ECF No. 62) is GRANTED IN PART (as to Defendant's testimonial immunity and certain damages) and DENIED IN PART (as to Defendant's entitlement to summary judgment on Plaintiff's fabrication-of-evidence and malicious prosecution claims) for the reasons stated more fully in the R&R.

IT IS SO ORDERED.

Dated: October 28, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 28, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager